UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARSENII MUSTAFIN, <br><br> Plaintiff, <br><br> v. <br><br> MARCO RUBIO, *Secretary U.S. Department of State, in his official capacity*; <br><br> BRIAN HEATH, *Consul General U.S. Consulate, Frankfurt, Germany, in his official capacity*; and <br><br> JOHN DOES 1-10, *Consular Officers responsible for issuing visas at the U.S. Consulate Frankfurt, Germany, in their official capacities*, <br><br> Defendants. | Civil Action No. 24-cv-12484-ADB |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Arsenii Mustafin ("Mustafin" or "Plaintiff") brings the instant suit against Marco Rubio, in his official capacity as Secretary of the U.S. Department of State; Brian Heath, in his official capacity as Consul General of the U.S. Consulate in Frankfurt, Germany; and John Does 1-10, in their official capacities as Consular Officers at the U.S. Consulate in Frankfurt (collectively, "Defendants") for failure to adjudicate his visa application within a reasonable time. The Complaint asserts claims for unreasonable delay under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1) (Count II) and seeks to compel agency action pursuant to the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361 (Count I). [ECF No. 1 ("Complaint" or

"Compl.")]. Presently before the Court is Defendants' motion to dismiss, [ECF No. 11], which is, for the reasons stated herein, **GRANTED** without prejudice.

I. BACKGROUND

Following a brief review of the applicable statutory scheme, the Court provides a summary of the relevant facts, taken primarily from the Complaint. As it may on a motion to dismiss, the Court also considers "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

A. Statutory Scheme

Under the Immigration and Nationality Act of 1952 ("INA"), a foreign citizen may only enter the United States with either an immigrant or a nonimmigrant visa. 8 U.S.C. §§ 1181(a), 1182(a)(7). The nonimmigrant F-1 visa allows foreign citizens who are enrolled as full-time students in an accredited academic educational program to enter the United States. U.S. Citizenship and Immigr. Servs., Students and Employment, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment (last visited May 21, 2025). As part of the F-1 visa application process, the applicant files the Nonimmigrant Visa Application, or DS-160, through the State Department's website. 22 C.F.R. § 41.103(a). The applicant must also attend an in-person interview with a consular officer. 8 U.S.C. § 1202(h) ("[T]he Secretary of State shall require every alien applying for a nonimmigrant visa" to appear for an interview.); see also 8 U.S.C. § 1202(d) ("All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."). After the interview, a consular officer must "issue the visa" or "refuse the visa." 22 C.F.R. § 41.121(a) ("When a visa application has

been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.").[1] If the consular officer refuses the visa, they must "inform the alien of the ground(s) of ineligibility . . . and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal." 22 C.F.R. § 41.121(b)(1).

Section 221(g) of the INA, the basis of refusal at issue here, provides that no visa shall be issued if:

> (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]

8 U.S.C. § 1201(g); see 22 C.F.R. § 41.121(a) (refusals of nonimmigrant visas "must be based on legal grounds, such as . . . INA 221(g)"); see also 8 U.S.C. § 1182 (a)(1)–(10) (defining "[c]lasses of aliens ineligible for visas or admission," on health-related grounds, criminal and related grounds, and security and related grounds, among others); 9 U.S. Dep't of State, Foreign Affairs Manual § 302.1-8(B)(a) ("FAM") (listing additional grounds for refusing a visa under INA 221(g), including where an applicant "fails to furnish information as required by law or regulations" or an application "is not supported by the documents required by law or regulations").

---

[1] An order under INA 243(d) allows the United States to sanction countries for failing to accept the return of their citizens and nationals removed from the United States. That provision, however, is not relevant for present purposes. 22 C.F.R. § 41.121(a); see 8 U.S.C. § 1253(d).

Agency guidance permits a consular officer who refuses a visa to obtain additional information from the applicant and place the visa application in "administrative processing." See 9 FAM § 306.2-2(A)(a); Rahman v. Blinken, No. 22-cv-02732, 2023 WL 196428, at *1 (D.D.C. Jan. 17, 2023) (noting that a consular officer "need only make an initial, rather than a final, determination about an applicant's visa eligibility" and that under § 221(g) they "can temporarily refuse to issue a visa in order to allow for further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility" (citing 8 U.S.C. § 1201(g)). Put differently, refusal under § 221(g) may be overcome "when additional evidence is presented, or administrative processing is completed." 9 FAM § 306.2-2(A)(a); U.S. Dep't of State, Administrative Processing Information, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited May 21, 2025) (stating that 221(g) refusal can be overturned if "the consular officer specifically told the applicant to provide documents or information" and that consular officer "will request additional information when she or he believes the information is relevant to establishing that an applicant is eligible for the visa sought."). According to the FAM, "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

B.    **Factual Background**

Plaintiff is a Russian citizen who in 2019 obtained an F-1 visa to enroll in a Ph.D. program at Boston University. [Compl. ¶¶ 1, 15].[2] He resided in Boston, Massachusetts until

---

[2] Prior to obtaining an F-1 visa to pursue his doctorate, Plaintiff had previously held a J-1 visa and was lawfully in the United States from April 4, 2018 through October 12, 2018. [Compl. ¶ 14].

May 17, 2024, when he traveled to Italy to spend a summer as a visiting researcher at the University of Naples.  [Id. ¶ 18].  On June 10, 2024, he applied to renew his F-1 visa by filing the online DS-160 application, [id. ¶ 19], and on June 13, 2024, appeared for his interview at the U.S. consulate in Frankfurt, Germany, [id. ¶ 20].  At the conclusion of the interview, the consular officer handed him a 221(g)-refusal notice for administrative processing.  [Id.].  He was also asked to submit some additional documents, which he promptly did.  [Id.].  Since this interview, Plaintiff has inquired about the status of his case repeatedly at the consulate and, in response, was informed that administrative processing is "a normal part of the visa application process which must conclude before a decision can be made," and that his application was "initially approved [] in Frankfurt."  [Id. ¶ 21].

### C.  Procedural History

On September 27, 2024, Plaintiff filed this action against Antony J. Blinken, N. Thatcher Scharpf, and John Does 1-10, named in their official capacities as, respectively, the Secretary of State, Consul General of the U.S. Consulate in Frankfurt, and Consular Officers.  [Compl. ¶¶ 7–9].  On January 21, 2025, Marco Rubio replaced Antony Blinken as Secretary of State, and, as of the date of this order, Brian Heath is the current Consul General at the U.S. Consulate in Frankfurt.  Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), Rubio in his official capacity is substituted as a Defendant in place of Blinken, and Heath in his official capacity as a Defendant in place of Scharpf.  Defendants moved to dismiss Plaintiff's Complaint on December 15, 2024, [ECF Nos. 11, 12], and Plaintiff opposed on December 19, 2024, [ECF No. 13 ("Opp'n")].  Both parties have since filed supplemental authorities.  [ECF Nos. 14–17].

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(1)

In general, when evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject-matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). When undertaking this evaluation, courts "apply the same plausibility standard used to evaluate a motion under Rule 12(b)(6)." Gustavsen v. Alcon Labs., Inc., 903 F.3d 1, 7 (1st Cir. 2018). The Court must therefore "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to the [Plaintiff's] cause." Royal v. Leading Edge Prods., 833 F.2d 1, 1 (1st Cir. 1987) (alterations omitted).

### B.  Rule 12(b)(6)

In a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pled facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011); Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

### III.   DISCUSSION

Defendants assert that Plaintiff's Complaint should be dismissed because (1) Defendants have completed the required statutory and regulatory action on Plaintiff's F-1 visa application by refusing it and have no duty to take further action, [ECF No. 12 at 5–11]; (2) the doctrine of consular nonreviewability bars this Court's review of Plaintiff's visa refusal, [id. at 11–13]; and (3) the alleged delay is not unreasonable, [id. at 13–20].  Plaintiff counters that by placing his visa application in administrative processing, Defendants have not yet rendered a final decision, [Opp'n at 2–8], and because final adjudication has not yet occurred, consular nonreviewability does not apply, [id. at 8–10].  Plaintiff also asserts that dismissal of the unreasonable delay claims is premature at this juncture, and that, even if the Court considered the merits at this stage, he has adequately pled unreasonable delay.  [Id. at 10–20].

### A.   The APA and MVA Claims

#### 1.   Jurisdiction

"While the APA does not provide an independent source of subject matter jurisdiction," Conservation L. Found. v. Busey, 79 F.3d 1250, 1261 (1st Cir. 1996), the MVA vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28

U.S.C. § 1361.[3]  As relevant here, courts "construe the APA and the MVA to be coextensive to the extent that the APA creates a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay." Pishdadiyan v. Clinton, No. 11-cv-10723, 2012 WL 601907, at *11 (D. Mass. Feb. 7, 2012), report and recommendation adopted, No. 11-cv-10723, 2012 WL 602036 (D. Mass. Feb. 22, 2012), dismissed (Apr. 11, 2014); see Kinuthia v. Biden, No. 21-cv-11684, 2022 WL 17653503, at *4 n.7 (D. Mass. Nov. 9, 2022).  "Thus, a claim under § 706(1)," as brought forth here, "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted).

The relevant language in the INA provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(d).  Courts are split as to whether § 1202(d) creates a nondiscretionary, mandatory duty to adjudicate nonimmigrant visa applications.  Compare Gomez v. Trump, 485 F. Supp. 3d 145, 198 n.23 (D.D.C. 2020) (section 1202(d) indicates that a consular officer has a nondiscretionary duty to adjudicate visa applications); Oladoja v. United States Dep't of State, No. 24-cv-01143, 2025 WL 880010, at *5 (D.N.J. Mar. 21, 2025) ("Under the plain language of the statute, Defendants have a mandatory,

---

[3] The Court notes that although Defendants cite both Federal Rules 12(b)(1) and 12(b)(6) as grounds for dismissal, the motion to dismiss is not "particularly precise in parsing out the specific grounds of its challenge to the counts in the Complaint." Aramnahad v. Rubio, No. 24-cv-01817, 2025 WL 973483, at *3 n.7 (D.D.C. Mar. 31, 2025).  While a clear duty to act for a mandamus claim requires that Plaintiff establishes subject matter jurisdiction, "[t]he requirement that Plaintiff[] identify a non-discretionary duty for purposes of the APA [] speaks only to whether Plaintiffs have stated a claim for relief." Id.  Court will therefore review the unreasonable delay claim under Rule 12(b)(6). See id. (citing Sierra Club v. Jackson, 648 F.3d 848, 854 (D.C. Cir. 2011)); see also Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 108–10 (D. Mass. 2024) (defendants moved to dismiss under Rule 12(b)(6) in an action seeking a writ of mandamus to compel the government to complete administrative processing).

nondiscretionary duty to adjudicate visa applications pursuant to Sections 1202(b) and (d)."); Shabani v. Rubio, No. 24-cv-00444, 2025 WL 1085075, at *5–6 (W.D. Va. Apr. 10, 2025) (section 1202(d), together with the implementing regulation found in 22 C.F.R. § 41.121(a), establishes a nondiscretionary duty for consular officers to review and adjudicate visa applications); Farahani v. Laitinen, No. 23-cv-00922, 2025 WL 360833, at *3 (M.D.N.C. Jan. 31, 2025) (same); and Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 99–100 (D.D.C. 2024) (same); with Zarei v. Blinken, No. 21-cv-02102, 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021) (section 1202(b), which is identical to the language in § 1202(d) but applies to immigrant visa applications, does not impose a nondiscretionary duty to review visa applications); and Mueller v. Blinken, 682 F. Supp. 3d 528, 535–36 (E.D. Va. 2023) (no mandatory, nondiscretionary duty under § 1202(b)) (and collecting cases). That said, district courts within the First Circuit have "typically found a 'nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.'" Durrani v. Bitter, No. 24-cv-11313, 2024 WL 4228927, at *2 (D. Mass. Sept. 18, 2024) (quoting Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 109 (D. Mass. 2024)). Because the Court finds no reason to reach a different outcome, and Defendants have not offered any persuasive arguments to the contrary, it assumes without deciding that consular officers have a nondiscretionary duty to adjudicate visa applications without unreasonable delay.[4]

---

[4] To the extent Defendants rely on Karimova v. Abate for the proposition that Plaintiff has failed to provide a source of law requiring the adjudication of his visa application under § 555(b), see [ECF No. 12 at 7–8], the Court is not persuaded that the case is of much assistance to Defendants. No. 23-cv-05178, 2024 WL 3517852 (D.C. Cir. July 24, 2024). In Karimova, Plaintiff relied only on § 555(b) as the source of the consular officer's duty to act. Id. at *3. In an unpublished opinion, the D.C. Circuit found that § 555(b) merely offers a non-specific directive to "conclude a matter" within a "reasonable time," without "plac[ing] upon consular

### 2. Consular Nonreviewability

The Supreme Court has recently held that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" Dep't of State v. Muñoz, 602 U.S. 899, 907 (2024) (quoting Trump v. Hawaii, 585 U.S. 667, 702 (2018)). Specifically, in relation to the doctrine of consular nonreviewability, the Court clarified that the INA "does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." Id. at 908.

At issue here, as the Court construes it, is not whether the Court can review a final visa adjudication, but rather whether the Court can compel Defendants to adjudicate a visa application during administrative processing. [ECF No. 12 at 11–13]; [Opp'n at 8–10]. Courts are split on this issue, and the First Circuit has yet to provide guidance. See Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 152–53 (D. Mass. 2024) (collecting cases); compare Dy v. Blinken, 703 F. Supp. 3d 314, 317 (D. Mass. 2023) (consular nonreviewability does not preclude claims seeking to compel final adjudication of visa application); and Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 11–12 (D.D.C. 2022) (visa application undergoing administrative processing not subject to consular nonreviewability); with Khan v. U.S. Dep't of State, 722 F. Supp. 3d 92, 98 (D. Conn. 2024) (consular nonreviewability bars compelling an

---

officers a 'crystal-clear legal duty'" to act. Id. at *4 (first quoting 5 U.S.C. § 555(b), and then quoting In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022)). In contrast here, Plaintiffs also invoke the Mandamus Act and 5 U.S.C. § 706(1). As such, the Court finds Karimova of limited guidance. See Motevali v. Rubio, No. 24-cv-01029, 2025 WL 885116, at *6 & n.4 (D.D.C. Mar. 21, 2025) (rejecting reliance on Karimova where plaintiffs cited provisions other than § 555(b) and further noting that the court was "reluctant to ascribe significance to a decision the D.C. Circuit chose not to publish").

official to adjudicate a visa application); and Samandar v. Blinken, 599 F. Supp. 3d 28, 29 (D. Mass. 2022) (consular nonreviewability "precludes review under the APA").

Given the different approaches among its sister courts and absent guidance from the First Circuit, for purposes of this order, the Court will assume that the consular nonreviewability doctrine does not bar judicial review of Plaintiff's claims to compel agency action under the APA.  See Conley, 731 F. Supp. 3d at 110.

### 3. Unreasonable Delay

"To state a claim for unreasonable delay under the APA, a plaintiff must allege that (1) a government agency failed to take legally required action and (2) the agency's delay in taking this action was unreasonable."  Conley, 731 F. Supp. 3d at 110 (first citing S. Utah Wilderness All., 542 U.S. at 62–63; and then citing Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023)).

With regard to the first factor, as noted above, Defendants argue that in placing Plaintiff's application in administrative processing, they have "refused" his visa and have therefore taken the required agency action.  [ECF No. 12 at 5–11].  Plaintiff replies that a "refusal" requiring further administrative processing does not amount to final adjudication and that, as a result, Defendants have failed in their duty to act on Plaintiff's visa application.  [Opp'n at 3–8]; [Compl. ¶ 42].

Both positions are supported by case law.  Compare Conley, 731 F. Supp. 3d at 107, 111 (refusal, even if the "agency identified a specific contingency that might warrant reconsideration," is a final decision); Taha v. Blinken, 765 F. Supp. 3d 91, 95 (D. Mass. 2025) ("Most other sessions of this Court have found that a visa application subject to administrative processing and reconsideration is a final decision and therefore cannot form the basis of a viable

unreasonable delay claim under the APA."); Yaghoubnezhad, 734 F. Supp. 3d at 101–02 (rejecting plaintiff's argument that refusal by way of placing a visa application in administrative processing does not constitute final adjudication because "nothing in § 41.121 provides a 'specific, unequivocal command' for State to issue a final, unreviewable decision" (internal quotations and citation omitted)); Shabani, 2025 WL 1085075, at *7 (same); and Ramizi v. Blinken, 745 F. Supp. 3d 244, 261 (E.D.N.C. 2024) (in the context of 22 C.F.R. § 42.81, which outlines the procedure in refusing immigrant visas, "the possibility of reconsideration of a refusal does not mean that the refusal was not a refusal")[5]; with Sawahreh v. U.S. Dep't of State, 630 F. Supp. 3d 155, 157 (D.D.C. 2022) ("The officer [under 22 C.F.R. § 41.121(a)] need only make an initial, rather than final, determination about an applicant's visa eligibility."); Ghannad-Rezaie, 757 F. Supp. 3d at 154 (administrative processing is not a final decision); Carter v. U.S. Dep't of Homeland Sec., No. 21-cv-00422, 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021) (refusal followed by administrative processing is not a final decision); and Ramirez v. Blinken, 594 F. Supp. 3d 76, 87 (D.D.C. 2022) (refusal of visa application after consular interview is not final as it may be entered into "administrative processing").

---

[5] Unlike 22 C.F.R. § 41.121, section 42.81 contains a provision entitled "Reconsideration of refusal," providing that:

> If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered. In such circumstance, an additional application fee shall not be required.

22 C.F.R. § 42.81(e). The "Grounds for refusal" provisions in both regulations are identical to the extent they state that a consular officer must "issue the visa," "refuse the visa," or "discontinue granting the visa." Compare § 42.81(a), with § 41.121(a).

Here, in the absence of any binding Circuit precedent on this issue, the Court is inclined to follow its sister courts that have determined that refusal for administrative processing does not fulfill a consular officer's duty to "issue" or "refuse" a visa application. Although Defendants nominally "refused" Plaintiff's F-1 application, see [Compl. ¶ 20 ("[T]he [consular] officer handed [Plaintiff] a 221(g)-refusal notice for administrative processing.")], his application, "by most other indications, [remains] in the adjudicative process." Khosravi v. Rubio, No. 24-cv-01227, 2025 WL 821885, at *4 (W.D. Wash. Mar. 14, 2025); Hassan v. Dillard, 758 F. Supp. 3d 973, 981 (D. Minn. 2024) ("Simply describing the decision as final does not make it so."). For example, when inquiring about the status of his visa application, the U.S. Consulate in Frankfurt replied that "a decision on this case cannot be made until we finish our review" and that it could not "predict when the adjudication of [his] application will be completed," and it reassured him that his "application is adjudicated as soon as the administrative processing has been completed." [ECF No. 1-2 at 1]. These statements suggest that his application is still undergoing adjudication and, as such, is not yet final. See Vulupala v. Barr, 438 F. Supp. 3d 93, 98 (D.D.C. 2020) (rejecting defendants' argument that a § 221(g) notification constitutes "refusal" and instead states that "the focus should be on what is actually happening"); Khosravi, 2025 WL 821885, at *5 ("[R]ather than simply accepting the label of 'Refused,' courts should consider 'what is actually happening' in a specific case to determine whether an agency has discharged its duty." (quoting Momeni v. Blinken, No. 24-cv-04879, 2024 WL 5112234, at *4 (C.D. Cal. Dec. 13, 2024))). Thus, for the narrow purposes of this order, the Court assumes that Defendants have yet to discharge their duty to act.

The second factor requires a finding that the agency's delay is unreasonable. To evaluate whether agency action is unreasonably delayed, courts in the First Circuit apply the six factor

13

rubric laid out in Telecomms. Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) (hereinafter "TRAC").  The TRAC factors are as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

Id. (cleaned up).

Although Plaintiff argues that the fact-intensive inquiry into the reasonableness of a delay is premature at the motion to dismiss stage, [Opp'n at 10–12], he must nonetheless plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see also Durrani, 2024 WL 4228927, at *3 (acknowledging that the TRAC factors are fact-intensive, but determining that the court must "evaluate the facts pleaded in the complaint and determine whether they plausibly state a claim for relief under the applicable law"); Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023) ("There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular Complaint.").  "Most sessions, however, evaluate the TRAC factors at the motion to dismiss stage." Rezaii v. Kennedy, No. 24-cv-10838, 2025 WL 750215, at *4 (D. Mass. Feb. 24, 2025)

The first two TRAC factors are usually considered together. Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). The first factor asks "whether the agency's response time . . . is governed by an identifiable rationale," Ctr. for Sci. in the Pub. Int. v. U.S. Food and Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014), and the second looks at whether "Congress has provided a timetable" that "may supply content for th[e] rule of reason," TRAC, 750 F.2d at 80. Neither factor supports a finding of unreasonable delay here.

As to the first factor, for visa applications, courts have generally found that an agency's process is governed by a "rule of reason," namely adjudicating applications "in the order they were filed." Durrani, 2024 WL 4228927, at *4 (quoting Memon v. Blinken, No. 22-cv-00754, 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023)). Referring in part to a U.S. State Department update dated January 2, 2024, which provides that the Department "prioritized student and academic exchange visitors to facilitate study at U.S. universities," [Compl. ¶¶ 28–29], Plaintiff suggests that "he has been passed over while millions of other visas were issued," [Opp'n at 12, 14–16]. Beyond this conclusory statement, however, Plaintiff "put[s] forth no compelling reason why the 'public facing announcements' of an agency should be understood to supply the granular substance of a rule of reason." [6] Milligan v. Blinken, No. 20-cv-02631, 2021 WL 3931880, at *8 (D.D.C. Sept. 2, 2021); Babaei v. U.S. Dep't of State, 725 F. Supp. 3d 20, 31–32 (D.D.C. 2024) (the State Department's announcement asserting a policy of prioritizing student and exchange-visitor visas does not operate as a rule of reason). In sum, nothing in the Complaint suggests that

---

[6] Neither does Plaintiff offer an explanation, or cite to any relevant case law, for the proposition that because he is not a first-time visa applicant and has previously successfully undergone security checks, his application should move more efficiently through the process. See [Compl. ¶ 30]; [Opp'n at 14–15].

Defendants ran afoul of a "rule of reason" or otherwise acted unreasonably with regard to Plaintiff's application.

As to the second factor, Plaintiff insists that a timetable does in fact exist. [Opp'n at 15–16]. Specifically, Plaintiff directs the Court to 8 U.S.C. § 1571(b), stating that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." [Opp'n at 15 (quoting 8 U.S.C. § 1571(b))]. Courts have repeatedly held, however, that this provision is "'precatory' and therefore entitled to little weight." Mosayebian v. Blinken, No. 24-cv-00130, 2024 WL 3558378, at *10 (S.D. Cal. July 25, 2024) (quoting Janay v. Blinken, 743 F. Supp. 3d 96, 116 (D.D.C. 2024)); Durrani, 2024 WL 4228927, at *4–5 (courts have interpreted § 1571(b) as nonbinding on agencies); Palakuru v. Renaud, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) ("[P]refatory 'sense of Congress' language . . . is best interpreted as nonbinding." (quoting 8 U.S.C. § 1571(b))); id. at 51–52 (collecting cases recognizing that "a sense of Congress resolution is not law" (quoting Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008))). Thus, because the F-1 visa has no statutory deadline, the Court looks to case law for guidance to assess whether the delay in adjudicating Plaintiff's visa application is unreasonable. Babaei, 725 F. Supp. 3d at 31; Dastagir, 557 F. Supp. 3d at 165.[7]

---

[7] The case law presented by Plaintiff does not compel a different outcome given that in those cases the time periods at issue were longer and the courts cautioned against overemphasizing the second factor. See, e.g., A.C.C.S. v. Nielsen, No. 18-cv-10759, 2019 WL 7841860, at *5 (C.D. Cal. Sept. 17, 2019) (concluding that § 1571(b) at best tips the scales slightly in favor of applicant and noting that the court is "reluctant to place much weight on this factor"); Uranga v.

Here, the case law does not support a finding of unreasonableness. As a general matter, delays between three to five years are not considered unreasonable. Sarlak v. Pompeo, No. 20-cv-00035, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (noting that while no bright lines have been drawn, delays between three to five years are generally not considered unreasonable) (collecting cases). At the time of this order, approximately twelve months have elapsed since Plaintiff re-applied for his F-1 visa and his application was placed in administrative processing. See [Compl. ¶¶ 19–20]. This is not outside the bounds of reasonableness. See Dastagir, 557 F. Supp. 3d at 165 (visa application in "administrative processing" for 29 months was not unreasonable); Zandieh v. Pompeo, No. 20-cv-00919, 2020 WL 4346915, at *5–7 (D.D.C. July 29, 2020) (same); Mirbaha v. Pompeo, 513 F. Supp. 3d 179, 185–86 (D.D.C. 2021) (27-month delay not unreasonable). The first and second TRAC factors, in other words, do not weigh in favor of Plaintiff.

The third and fifth factors are also ordinarily assessed together and relate to the "interests prejudiced by the delay," including the "impact on human health and welfare and economic harm." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Plaintiff argues that the delay has caused significant financial and emotional harm: his academic and professional careers are jeopardized; he is required to maintain two homes in two separate countries, putting a severe strain on his financial resources; and he deals with the uncertainty of whether he will be

---

U.S. Citizenship & Immigr. Servs., 490 F. Supp. 3d 86, 103 (D.D.C. 2020) (finding that § 1571(b) tilted the second factor in favor of plaintiff whose application had been pending for over four years); Khan v. Johnson, 65 F. Supp. 3d 918, 921, 930 (C.D. Cal. 2014) (concluding that the second factor was "of little consequence," but nonetheless "slightly favors" plaintiff whose application had been pending for more than seven years). Regardless, even if the second factor favors Plaintiff slightly, it would not change the Court's overall disposition.

able to return to the United States before his Schengen visa expires, which would force him to return to Russia, where he might be drafted into the army to fight in the country's on-going war with Ukraine. [Compl. ¶¶ 24–27]; [Opp'n at 17]. The Court is sympathetic to Plaintiff's difficult circumstances. Nonetheless, "the hardships that [Plaintiff] alleges do not materially distinguish his circumstances from those of the countless other adult citizens." Ghannad-Rezaie, 757 F. Supp. 3d at 156; Durrani, 2024 WL 4228927, at *5 ("[P]laintiff is not uniquely situated. It is true that plaintiff would benefit from an expedited review. But 'so, too, would presumably . . . every petitioner currently awaiting a decision.'" (quoting Tang v. United States, No. 23-cv-13187, 2024 WL 1836624, at *3 (D. Mass. Apr. 26, 2024)); see also Daneshvarkashkooli v. Blinken, No. 23-cv-01225, 2024 WL 1254075, at *5 (D.D.C. Mar. 25, 2024) (rejecting plaintiffs' argument that they may lose a graduate position due to the delay in F-1 visa adjudication because "these interests are no different than those of any other foreign national with an F-1 visa application pending who is currently in the queue in front of plaintiffs"); Nosraty v. Oudkirk et al., No. 23-cv-04632, 2024 WL 654556, at *3 (C.D. Cal. Jan. 2, 2024) (although one of the visa applicants was likely subject to mandatory military service in Iran unless his visa was promptly adjudicated, the court noted that many others face similarly challenging situations and concluded that the third and fifth factors favored neither plaintiff nor defendant). These factors therefore do not support a finding of unreasonable delay or are at best neutral for Plaintiff.

      The fourth TRAC factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." 750 F.2d at 80. Courts have generally "declined to move plaintiffs to 'the head of the queue' because doing so would 'simply move[] all others back one space and produce[] no net gain.'" Durrani, 2024 WL 4228927, at *5

(alterations in original) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Plaintiff asserts that Defendants wrongly contend "that affording [him] relief would place his visa application above all others," because there is no evidence to suggest that he would "skip ahead in line of other applicants." [Opp'n at 17–18]. The Court cannot agree with Plaintiff. Specifically, the Court cannot discern how compelling agency action on Plaintiff's visa application would not "necessarily come at the expense of similarly situated applicants." Sharifishourabi v. Blinken, No. 23-cv-03382, 2024 WL 3566226, at *9 (D.D.C. July 29, 2024) (quotation omitted). This factor thus supports a finding in Defendants' favor.[8] Durrani, 2024 WL 4228927, at *5. Finally, because Plaintiff alleges no facts suggesting bad faith or impropriety on the part of the Defendants, the sixth TRAC factor weighs neutrally in the Court's analysis. Palakuru v. Renaud, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). In sum, in light of the TRAC factors, the Court concludes that Plaintiff has failed to state a claim for unreasonable delay under the APA and the MVA.[9]

---

[8] Plaintiff further maintains that Defendants, in support of the fourth TRAC factor, argue that it is in their discretion to allocate agency resources for visa adjudication as they deem necessary. [Opp'n 18–19]. The Court, however, cannot find such an argument in Defendants' motion to dismiss. See [ECF No. 12 at 18–19].

[9] There is limited guidance from this Circuit as to the distinction between "unreasonably delayed" and "unlawfully withheld" under § 706(1). Other courts in this session seemingly adopted the Tenth Circuit's reasoning in Forest Guardians v. Babbitt, holding that an agency that fails to meet a nondiscretionary deadline has "unlawfully withheld" action. 174 F.3d 1178, 1189-91 (10th Cir. 1999) (explaining that the legislative history of § 706(1) "provide[s] little guidance regarding any possible distinction" between the terms); see Oxfam Am., Inc. v. U.S. SEC, 126 F. Supp. 3d 168 (D. Mass. 2015); Am. Acad. of Pediatrics v. U.S. Food & Drug Admin., 330 F. Supp. 3d 657, 663–64 (D. Mass. 2018). Specifically, the Court of Appeals concluded that the distinction "turns on whether Congress imposed a date-certain deadline on agency action," and, as such, "if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions—such as the APA's general admonition that agencies conclude matters presented to them 'within a reasonable time'—a court must

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, [ECF No. 11], is **GRANTED** without prejudice.

**SO ORDERED.**

June 5, 2025                                             */s/ Allison D. Burroughs*
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE

---

compel only action that is delayed unreasonably." Forest Guardians, 174 F.3d at 1190 (internal citation omitted). Here, in the absence of any "absolute deadline," the Court's query ends with analyzing whether Plaintiff's visa application has been "unreasonably delayed." Id.